IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANETA HADZI-TANOVIC, individually and as a natural mother and next friend for SP, KP, and MP, all minors, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 20 C 03460 |
| ROBERT W. JOHNSON, DAVID P. PASULKA, and SLOBODAN M. PAVLOVICH | ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case arises out of the divorce of plaintiff Aneta Hadzi-Tanovic and defendant Slobodan Pavlovich and their ensuing dispute over the custody of their three minor children. Hadzi-Tanovic alleges that Pavlovich conspired with the state court judge and guardian ad litem to deprive her of her constitutional rights as a parent and to deprive the minor children of their rights to familial association. All three defendants have moved to dismiss the complaint for failure to state a claim, and Judge Johnson has moved to dismiss for lack of subject-matter jurisdiction. The Court agrees that dismissal is warranted, but pursuant to abstention principles rather than for lack of subject-matter jurisdiction.

## BACKGROUND[1]

In October 2014, Slobodan Pavlovich filed proceedings for dissolution of marriage against his then-wife Aneta Hadzi-Tanovic in the Circuit Court of Cook County, Illinois. Throughout the proceedings, Hadzi-Tanovic and Pavlovich engaged in a heated custody battle. Each parent accused the other parent of abusing the minor children. Hadzi-Tanovic and Pavlovich agreed to equal parenting time in an agreed order that the state court entered on February 26, 2015. That order did not end the parties' dispute over parenting time and custody, however.

The state court appointed defendant David Pasulka as the children's guardian ad litem in August 2016.[2] About a month later, on September 23, 2016, the minor children told their therapists that Hadzi-Tanovic abused them. When they made these allegations, the children were staying with their father. Pavlovich informed Pasulka of the allegations against Hadzi-Tanovic. The therapists reported the children's statements to the Department of Children and Family Services (DCFS). Initially, DCFS declined to investigate. Pavlovich called DCFS on September 29, 2016, and again reported the alleged abuse. After the call, DCFS opened an investigation. Investigators met with the children at school and met with them and Hadzi-Tanovic at her residence. On October 21, 2016, the DCFS worker assigned to the case informed Pasulka that she did not believe that

---

[1] The facts alleged in the complaint are presumed true for purposes of these motions. *Savory v. Cannon*, 947 F.3d 409, 411-12 (7th Cir. 2020) (en banc). They are supplemented where indicated with information included in exhibits to the plaintiff's complaint.

[2] The parties report in their briefing that the Attorney Registration & Disciplinary Commission of the Supreme Court of Illinois (ARDC) issued a complaint against Pasulka and that he was arrested and faces criminal charges related to misconduct as guardian ad litem in other cases. One of the allegations against Pasulka is that he coerced litigants to have sexual contact with him in exchange for favorable reports and testimony. Hadzi-Tanovic does not allege that those circumstances are present in this case. The ARDC complaint and criminal case do not bear on the merits of her complaint.

Hadzi-Tanovic was abusing the children and that she believed that Pavlovich coached the children or suggested that they make allegations against their mother.

Hadzi-Tanovic alleges in her complaint that Pavlovich repeatedly threatened to report her for alleged abuse unless she agreed to his demands in the divorce proceedings. She also alleges that her children told her that Pavlovich threatened and abused them. They told her that their father forced them to tell Pasulka that Hadzi-Tanovic abused them. On November 3, 2016, Hadzi-Tanovic brought two motions in state court. She filed a "Petition for Rule to Show Cause and for Finding of Indirect Civil Contempt" based in part on her allegations that Pavlovich physically and emotionally abused their children. She also filed a motion for a professional evaluator. In that motion, she alleged that Pavlovich made false reports that she abused the children and forced them to report false claims that their mother abused them.

On March 15, 2017, Judge Robert W. Johnson was assigned to Hadzi-Tanovic's and Pavlovich's divorce case. Hadzi-Tanovic alleges that, starting in April 2017, Pasulka began reporting to the state court that he thought Hadzi-Tanovic coached the children. At unspecified times, Hadzi-Tanovic alleges that she saw Pasulka leave Judge Johnson's chambers together with the judge before hearings. On April 20, 2017, Judge Johnson denied her motion for an evaluator and set a trial date of June 12, 2017. Shortly before trial on June 8, 2017, Hadzi-Tanovic's attorneys withdrew. At a hearing on the same date, Judge Johnson refused to postpone the trial to allow Hadzi-Tanovic time to obtain new counsel and prepare for trial. She appeared at trial with substitute counsel, who also asked to continue the trial date. That motion was also denied.

Judge Johnson entered judgment for dissolution of marriage. Hadzi-Tanovic was required to sign an Allocation Judgment of Parenting Responsibilities and Parenting Plan (Allocation Judgment) that gave fifty-fifty parenting time to Hadzi-Tanovic and Pavlovich. The state court

3

denied her motions to reconsider. She alleges that she lost her subsequent appeal not on the merits but because there was no court reporter for the hearing and trial and thus no transcript for either proceeding.

Hadzi-Tanovic's and Pavlovich's conflicts over custody continued. As part of the Allocation Judgment, Pasulka arbitrated disputes over extracurricular activities. The children's participation in band and orchestra became a focus of their parents' custody disputes. Hadzi-Tanovic alleges that Pasulka spoke with the children about their participation in band and orchestra without her knowledge while they were staying with Pavlovich. Once Pavlovich learned that their son SP wished to participate in band and orchestra, he punished SP. Hadzi-Tanovic alleges that Pavlovich yelled at SP and locked him in his room for hours at a time. Pavlovich would not let SP out to use the bathroom. SP told DCFS that he had to urinate in a pencil box. The children reported their father to school social workers. SP wanted to go to the police. On January 31, 2018, Hadzi-Tanovic took SP to the police station to make a report. The police interviewed SP and reported the allegations against Pavlovich to DCFS. On February 12, 2018, a DCFS investigator directed the school not to release the children to Pavlovich unless he had a court order.

On February 13, 2018, Pavlovich filed an "Ex Parte Emergency Motion for Temporary Suspension of Aneta's Parenting Time or in the Alternative for Aneta's Parenting Time to be Supervised." In his motion, Pavlovich accused Hadzi-Tanovic of manipulating DCFS and the police to deprive him of his parenting time. At a February 14, 2018, hearing, Pasulka reported his opinion that the children were safe with Pavlovich. Pasulka characterized Pavlovich squeezing the boys' heads and putting his fist on their chests as "fooling around." Compl. ¶ 56. Judge Johnson ordered make-up parenting time for Pavlovich. He also ordered Hadzi-Tanovic and the children's schools not to interfere with Pavlovich's parenting time.

4

That same day, February 14, 2018, Pavlovich filed a "Petition for Rule to Show Cause" against Hadzi-Tanovic for interfering with his parenting time. The next day, Pasulka spoke with two of the three children. On February 16, 2018, SP texted Hadzi-Tanovic that "David [Pasulka] was totally biased he was telling me what happened and saying I was wrong" and "[h]e was telling me that you were so bad." Compl. Ex. D at 19, 20, ECF No. 1-1.

Judge Johnson issued a Rule to Show Cause on March 9, 2018, and scheduled a hearing for March 23. On March 9, 2018, Pasulka submitted a report to the state court and testified at a hearing. Compl. Ex. E, ECF No. 1-1. Pasulka's report recommended revoking Hadzi-Tanovic's rights to "weekday parenting time [before] school days." *Id.* at 3. He testified that each child independently told him that Hadzi-Tanovic said "a judge put a 12-year old and an 8-year old in jail because of a visitation problem and because the children didn't want to go with dad." Compl. ¶ 61. Pasulka concluded that Hadzi-Tanovic forced the children to lie about Pavlovich and that the state court should revoke her right to weekday visitation.

In support of her position, Hadzi-Tanovic submitted two letters by SP. Hadzi-Tanovic alleges that the judge ignored SP's letters. Judge Johnson did not allow her to call her children as witnesses. He also refused to interview them in his chambers or read Hadzi-Tanovic's offer of proof regarding the children's testimony. On May 3, 2018, Judge Johnson found that Hadzi-Tanovic was in indirect civil contempt for interfering with Pavlovich's parenting time. Pavlovich filed another emergency motion in May after two of the children allegedly refused to leave with him and police were called. Judge Johnson restricted Hadzi-Tanovic to supervised parenting time on June 13, 2018.

In this case, Hadzi-Tanovic is suing Pavlovich, Pasulka, and Judge Johnson. She brings two conspiracy claims pursuant to 42 U.S.C. §§ 1983 and 1985(3). She also brings state law claims

5

for abuse of process and intentional infliction of emotional distress. She alleges that the defendants conspired to deprive her of her parental rights and her children of their rights to familial association under the Due Process Clause of the Fourteenth Amendment. All three defendants filed motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6), and Judge Johnson also moved to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

**DISCUSSION**

Rule 12(h)(3) of the Federal Rules of Civil Procedure states that a district court must dismiss a claim if it lacks subject-matter jurisdiction over it. While only Judge Johnson brought a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, that does not limit this Court's authority to dismiss the claims against Pasulka or Pavlovich. In every case, this Court has an independent obligation to assure itself of subject-matter jurisdiction. *Aljabri v. Holder*, 745 F.3d 816, 818 (7th Cir. 2014) ("[W]e are required to consider subject-matter jurisdiction as the first question in every case[.]"). If this Court determines that it lacks subject-matter jurisdiction, it must dismiss the claim or claims over which it does not have jurisdiction. *Id.*; Fed. R. Civ. Pro. 12(h)(3).

Judge Johnson's motion invokes several doctrines in support of dismissal for lack of subject-matter jurisdiction—namely, the domestic-relations exception to federal jurisdiction, the *Rooker-Feldman* doctrine, and the *Younger* abstention doctrine. None of the doctrines the motion relies upon, however, deprive this Court of subject-matter jurisdiction or otherwise warrant dismissal of the plaintiff's claims. Nevertheless, the Court concludes that dismissal is warranted on general abstention grounds and grants the motion on that basis. Federal courts may raise abstention sua sponte, *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 524-25 (7th Cir.

6

2021), and the Court deems it appropriate to do so here, particularly in light of the principles of federalism, equity, and comity that animate abstention doctrine.

The Court's action in this case is dictated by the Seventh Circuit's recent decision in *J.B. v. Woodard*. 997 F.3d 714 (7th Cir. 2021). There, the Court of Appeals addressed a very similar case in which a parent sued DCFS on behalf of himself and his children, alleging that DCFS employees violated their rights to familial association. *Id.* at 717. He alleged that the employees' conduct led to an order suspending his parenting time. *Id.* On that claim, the district court held that the *Younger* abstention doctrine precluded the court's exercise of subject-matter jurisdiction. *J.B. v. Woodward*, No. 19-cv-4065, 2020 WL 207712, at *3 (N.D. Ill. Jan. 14, 2020). Concluding that none of the jurisdictional and abstention doctrines the defendant relied upon on appeal was "an exact fit," the Seventh Circuit nevertheless concluded that abstention was warranted in view of "[t]he abstention doctrines' underlying principles of comity, equity, and federalism." *Woodard*, 997 F.3d at 723, 724. So too here. As the discussion below explains, none of the grounds invoked by Judge Johnson's motion—the *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, or the domestic-relations exception—are a perfect fit for the facts of this case. But the same principles that compelled the Seventh Circuit to abstain in *Woodard* apply with equal—actually greater— force here.

      1.  The *Rooker-Feldman* doctrine does not deprive this Court of subject-matter jurisdiction.

Judge Johnson invokes the *Rooker-Feldman* doctrine, which precludes federal courts (other than the Supreme Court) from exercising subject-matter jurisdiction over claims brought by parties that seek review or modification of final state-court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *see also Andrade v. City of Hammond, Ind.*, 9 F.4th 947, 949-50 (7th Cir. 2021); *Long v. Shorebank*

7

*Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). There are at least two exceptions to application of the *Rooker-Feldman* doctrine that likely preserve this Court's subject-matter jurisdiction: there may not be a final order and, if there is, the complaint alleges that it was the product of corruption of the state judicial process.

Taking the latter first, the Seventh Circuit has held that "[t]he claim that a defendant in a civil rights suit 'so far succeeded in corrupting the state judicial process as to obtain a favorable judgment' is not barred by the *Rooker–Feldman* doctrine." *Loubser v. Thacker*, 440 F.3d 439, 441 (7th Cir. 2006) (quoting *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)). That is precisely the claim here. Hadzi-Tanovic alleges that the state judge, guardian ad litem, and Pavlovich conspired to deprive her and her children of their constitutional rights to familial association.

And second, as Judge Johnson's motion acknowledges, it is not clear whether Hadzi-Tanovic's complaint relates to a final order given the motion to vacate and the prospect of ongoing monitoring by the state court. The order limiting Hadzi-Tanovic's parenting time to supervised time might be part of the state court's continuing management of this custody dispute. On the other hand, it might be the state court's final custody determination. Even if the Allocation Judgment and later supervised parenting time order constitute final orders, Hadzi-Tanovic does not ask this court to review or modify those orders. Her alleged injury stems not from the state court orders but from the alleged conspiracy. And to the extent that Hadzi-Tanovic's claims do ask this court to review the orders and apply Illinois family law to determine damages, her claims fall under the corruption exception and are not barred.

2. The *Younger* abstention doctrine does not apply to this proceeding.

In the alternative, Judge Johnson's motion to dismiss argues that this court should abstain from addressing Hadzi-Tanovic's claims if the state court proceedings are ongoing. The Supreme

8

Court held in *Younger v. Harris*, 401 U.S. 37 (1971), that federal district courts must abstain from addressing constitutional claims that might interfere with ongoing state court proceedings. That doctrine applies in "three limited categories of cases, . . . where federal court intervention would intrude into ongoing state criminal proceedings, into state-initiated civil enforcement proceedings akin to criminal prosecutions, or into civil proceedings implicating a state's interest in enforcing orders and judgments of its courts." *Woodard*, 997 F.3d at 722.

The underlying proceeding here, a civil divorce case and ensuing custody battle, does not fit in any of the three categories. *Id.* (holding that the underlying divorce proceeding did not fit within any of the categories) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013)). Assuming that the state proceedings are ongoing, the *Younger* abstention doctrine does not require abstention in this case.

3. The domestic-relations exception does not bar subject-matter jurisdiction.

Judge Johnson also challenges subject-matter jurisdiction under the domestic-relations exception to federal jurisdiction. The domestic-relations exception "covers a 'narrow range of domestic relations issues involving the granting of divorce, decrees of alimony,' and child custody orders." *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 701 (1992)). In *Kowalski*, the Seventh Circuit held that the exception did not bar the plaintiff's claims because he "does not challenge any action taken by the court and its officers in the course of adjudicating his marriage or custody action. . . . [and the Court] need not pass on the state court's application of family law in order to adjudicate Kowalski's case." 893 F.3d at 996.

The Seventh Circuit recently confirmed the narrow scope of the domestic-relations exception in *Woodard,* a case, like this one, in which a parent brought claims for damages from the suspension of parenting time and for infringing his children's rights to familial association. *Woodard*, 997 F.3d at 723. In *Woodard*, the court held that the domestic-relations exception did

9

not bar jurisdiction. The court held that the exception did not bar plaintiff's claims for damages from "defendants whose actions allegedly paved the way for the state court's orders." *Id.* That is the case here; again, Hadzi-Tanovic does not ask this court to review or modify state court orders but seeks relief based on the actions of the alleged conspiracy, which allegedly "paved the way" for the state court orders.

The *Woodard* court also considered whether *Burford* abstention doctrine could be applicable. 997 F.3d at 723. *Burford* abstention may apply in a case that does not fit the domestic-relations exception but does "present[] 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.'" *Ankenbrandt*, 504 U.S. at 705-06 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)); *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The Seventh Circuit held that *Woodard*, a similar case related to a state court child-custody proceeding, did not present such "difficult questions." 997 F.3d at 723. The same is true in this case. To the contrary, this case presents highly fact-intensive, particularized, and discretionary judgments by state actors and courts that are unlikely to have any transcendent import. *Burford* abstention is therefore unwarranted.

4. General abstention principles warrant dismissal.

Notwithstanding that none of the doctrines set forth in Judge Johnson's Rule 12(b)(1) motion precisely fit the facts of this case, it is clear that abstention is the appropriate and required course to follow here. "[F]ederal courts may decline to exercise jurisdiction where denying a federal forum would 'clearly serve an important countervailing interest,' including 'regard for federal-state relations.'" *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).

In *Woodard*, the Seventh Circuit abstained from exercising jurisdiction despite that Court's conclusion "that no abstention doctrine is an exact fit." 997 F.3d at 723. The Court found that demanding strict adherence to doctrinal requirements would "risk[] a serious federalism infringement." *Id.* (holding that the plaintiff designed his complaint to receive a judgment that could influence ongoing state court proceedings). The Seventh Circuit emphasized that the declaratory and injunctive relief sought by the plaintiff in *Woodard* reinforced the Court's conclusion that it should abstain. *Id.* Even so, the Court held that its "reasoning applies with equal force to [the plaintiff]'s request for . . . compensatory damages." *Id.* at 724. The Court concluded that the plaintiff could also use a judgment granting compensatory damages to disrupt the proceedings in state court. *Id.*; *see also Courthouse News Serv.*, 908 F.3d at 1071.Comity and federalism grounds also support abstention in this case. Adjudication of Hadzi-Tanovic's claims risks influencing the state court's custody proceedings. Indeed, Hadzi-Tanovic constructed her complaint to disrupt state court proceedings. She alleges that state court orders are the products of a corrupt conspiracy. She does not ask for equitable remedies, but her conspiracy claims are based on the state court judge and guardian ad litem's official actions. She challenges the guardian ad litem's investigations, the judge's handling of the facts, and meetings between the judge and guardian ad litem. *See In re Br. M.*, 2021 IL 125969, ¶ 59 (noting that a guardian ad litem is "an adviser to the court").

Hadzi-Tanovic asks this Court to examine and criticize the state court's application of family law. To find in her favor, this Court would have to find that the state court judge's and guardian ad litem's official actions evidenced a conspiracy with Pavlovich to deprive Hadzi-Tanovic and her children of their constitutional rights to familial association. Hadzi-Tanovic "could then use that judgment to interfere with ongoing state court proceedings." *Woodard*, 997

F.3d at 724. That would be an unacceptable intrusion into the domain of the state domestic relations court. Indeed, the case for abstention is even stronger here than it was in *Woodard*, since by naming the judge as a defendant, Hadzi-Tanovic presents a direct challenge to the legitimacy of the state court's actions. *See Bush v. Carr*, No. 20 C 6634, 2021 WL 4552555, at *1 (N.D. Ill. Oct. 5, 2021) (observing, in related case to *Woodard*, in which the same plaintiff sued the judge, that if abstention was warranted in *J.B. v. Woodard*, it is "surely is warranted here, where Bush sues [the Judge] himself and asks this court to directly decide the constitutionality of the judge's rulings and actions").

Accordingly, this Court declines to exercise jurisdiction given the federalism and comity concerns that adjudicating this case would present. The Court also declines to stay the case pending the state court outcome. While federal courts generally stay rather than dismiss damages claims in the context of the *Younger* abstention doctrine, *see Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013) (holding that the district court should have stayed the dismissed claims because damages were not available in the state proceedings), that course would not be appropriate here. The state court's oversight will likely continue until all three of Hadzi-Tanovic and Pavlovich's minor children reach 18 years of age. When Hadzi-Tanovic filed this suit in June 2020, her eldest child was 14 or 15 years-old. She did not allege the ages of her two younger children, but it is plain that if stayed, this case would remain pending on this Court's docket for many years before the state court's supervision ended. *Woodard*, 997 F.3d at 725 (holding that a stay is impractical when "state court custody proceedings, or, at least oversight by the state court, will be continual until the children reach 18 years of age"). In these circumstances, this Court favors dismissal without prejudice over a lengthy stay.

12

\* \* \*

The Court abstains from exercising jurisdiction over Hadzi-Tanovic's claims. The complaint is dismissed without prejudice as to all defendants; this ruling is not intended to preclude the assertion of any claim in state court. Judge Johnson's motion to dismiss for lack of subject-matter jurisdiction [30] is granted but on abstention rather than jurisdictional grounds. Defendant Pasulka's and defendant Pavlovich's motions to dismiss [6] and [26] are dismissed as moot.

Dated: November 24, 2021

John J. Tharp, Jr.
United States District Judge